The opinion of the court was delivered by
Mare, J.
Appellants, plaintiffs, dealers in coal oil, in the city of New Orleans, brought this suit to have declared unconstitutional and void an act of the Legislature, No. 37, of the extra session of 1877, p. 60, entitled “ An act to provide for the gauging and inspecting coal oils, or fluids derived wholly or in part from coal or petroleum; to regulate the sale or disposition of the same; to prohibit, in certain cases, the sale or disposition of illuminating oils or fluids dangerous to life and prop•erty, and to prescribe penalties for violations of this act.”
They also sought to obtain an injunction forbidding the Board of Health .to collect fees, as provided for'in the act, and to execute it otherwise, on the ground that its provisions are in conflict with both the Federal and State constitutions.
Appellees, defendants, excepted that the petition disclosed no cause •of action; and they also answered by pleading the general issue; On rule nisi, the district court refused to grant the preliminary injunction; and, on trial on the merits, there was judgment in favor of defendants •against plaintiffs, from which plaintiffs appealed.
There are no issues of fact involved. The plaintiffs object that the •act in question violates articles llá and 118 of the State constitution; *1352 and article 1, section 8, clause 3, and section 10, clause 2, of the constitution of the United States. We shall consider these objections ire their order.
First — Article 114 of the constitution of the State provides that " every law shall express its object or objects in the title.” The first and second sections of the act authorize the State Board of Health, in the parish of Orleans, and the mayors and councils of the towns and cities in other parishes, of not less than 2000 inhabitants, to appoint gaugers and inspectors of coal oils and all illuminating fluids or oils derived wholly or in part from coal or petroleum, and of all fluids commonly known in commerce as naphtha, deodorized naphtha, or gasoline, or benzine; the gaugers and inspectors to be sworn, and to give bond for the faithful performance of their duties; and to receive such salaries-as may be fixed by the Board of Health, or the mayors and councils by which they are respectively appointed.
The third and fourth sections prescribe the duties of these gaugers and inspectors. The fourth section provides that they shall give proper certificates to those requiring such gauging and inspection, duplicates to be furnished to the Board of Health, and it authorizes the Board of Health in New Orleans to collect a fee of a quarter of a cent a gallon, for gauging and inspecting oils not in barrels, and twelve and a half -cents per bárrel, including the replacing of the bung.
The fifth section imposes a penalty for selling or exposing for sale coal oil or illuminating oil or fluid, as described in the first section, not gauged and inspected. The sixth section prescribes the penalty for selling or exposing for sale, or giving or delivering such coal oils or illuminating fluids the flashing point of which is less than 125 degrees of Fahrenheit, unless the package be stamped conspicuously, “ explosive and dangerous:” and the seventh section prescribes the penalty for selling or giving or delivering any such illuminating oils or fluids which have not been inspected, gauged, and stamped.
The eighth section makes it the duty of the Board of Health in, New Orleans, and of the district attorneys in the country parishes, to sue for the penalties incurred by violation of the act; and provides for the disposition to be made of the fines recovered, to be paid to the Board of Health in New Orleans, and to the Oharity Hospitals at Shreveport and Baton Rouge.
The ninth section, the more effectually to carry out the provisions of the act, authorizes the district attorneys in the country parishes, and the Board of Health in New Orleans, at the time of bringing suit, or subsequently, without bond, to obtain a writ of injunction forbidding the defendant in such suit to do or suffer to be done any of the acts on account of which such suit was brought: and the tenth section fixes *1353 the date at which the act shall take effect; and repeals all conflicting or inconsistent laws.
If there is any part of this act which is not strictly germain to and. included in the objects expressed in the title, we confess our total inability to perceive it: nor can we discover in it any violation of act 114 of the constitution.
Second — Article 118 of the constitution provides that “taxation shall be equal and uniform throughout the State;” it also forbids specific-taxation; and it requires that all property shall be taxed ad valorem.
There is nothing in this act that can be supposed to be in violation of this article of the constitution except the fee of a quarter of a cent, per gallon, or twelve and a half cents per barrel, which section 4 authorizes the Board of Health in New Orleans to collect.
As early as 1805 an act of the Legislature was passed, regulating the inspection of flour, beef, and pork, fixing the weight of the barrel, the fees for inspection, and penalties for violation of the provisions of the act. In 1816, an act was passed regulating the inspection of tobacco-in hogsheads and casks, fixing the fees for inspection, and prescribing penalties, etc. Hay also was made subject to inspection; and so were weights and measures. These laws have been' revised, and re-enacted;- and they are local regulations; they are now in force. Similar laws exist in all the States; and yet, it is a fundamental principle in all well-organized governments, that taxation must be uniform and equal; and this-' principle derives no additional force by the mere formulation of it in written constitutions.
Inspection laws are a necessity. They have for their object the protection of buyers and consumers against fraud in weights andi measures; and of life and property against the risks of exposing for sale and selling, without proper notice and warning, dangerous commodities, and such articles of food as are unfit for use, or, from their condition, would be injurious to health.
It is admitted, indeed it can not be questioned, that as inspection laws are necessary, it is also necessary to compensate the persons charged with the important duties required of inspectors. The specific-objections to the'act in question are that the fees fixed by section 3 are applicable to dealers in New Orleans alone; and are, therefore, partial;- and that they are not paid to the inspectors as compensation for their services, but to the Board of Health; and it is urged that this feature-makes them a tax.
With respect to this first objection, it is a sufficient answer to say that inspection laws are local. They are specially required at the great marts; and in a crowded city like New Orleans, where immense quantities of the explosive and dangerous illuminating fluids specified in the- *1354 •first section of the -act are in the hands of the numerous dealers, and are used in so many houses, and by so many of the inhabitants; where 'liability to explosions is so greatly increased; and where the consequences would be so much more destructive of life and property than' in a small village, or in a single isolated house, there is so much the greater necessity for careful inspection, and for putting conspicuously on the packages in which these fluids are contained marks indicating plainly to dealers and consumers the degree of caution which is necessary to be observed in handling and using them.
In the country parishes, the Legislature deemed it sufficient to authorize the mayors and councils to appoint and to fix the salaries of the gaugers and inspectors; but it also deemed it necessary, in the city of New Orleans, to intrust this entire business to the Board of Health, ■composed, in part, at least, of scientific men, capable of ascertaining the qualifications of the gaugers and inspectors appointed by them, and of seeing that the important duties required of these functionaries are faithfully performed. The Board of Health fixes and pays the salaries; and obtains the means to pay them by collecting the fees provided in the act.
All such legislation falls within the police power of the State ; aind the State has chosen, in view of the grave interests involved, to delegate to the Board of Health the authority and the duty to see that the law is enforced. There can be no reason why the State should not thus provide for the execution of this branch of the police power, as validly ■as it might have contented itself with providing for the appointment of the inspectors by the Governor, or otherwise, and have fixed their feesu It was not unwise to require the Board to take upon itself this inspection, and to make the inspectors dependent upon and responsible to •the Board.
We do not perceive in what respect the public interest suffers any detriment by the special provisions applicable to the city of New Orleans alone; nor do we think that this feature in the act, or any other of its provisions, violates article 118 of the constitution.
Third — Clause 3, section 8, article 1, of the cpnstitution of the United States declares that the Congress shall have power “ to regulate ■commerce with foreign nations, and among the several States, and with the Indian tribes.” Under this clause foreign nations and the several States of the Union have the right to send to our market the products of the soil, and the results of their skill and labor, subject to such regulations and restrictions as the Congress may impose. The State •can not interpose any obstacle to this traffic, commerce; but the State •can protect the health, the lives, and the property of its inhabitants «gainst false weights and false measures: against the improper exposure «nd sale of articles dangerous to life and to property, or injurious to *1355 health by their unsound condition and. unfitness for food for man or ■beast. Such regulations do not fall within the terms and meaning of this clause of the constitution; they belong, not to the Oongress, but ho the police power of the State; and. the Oongress can not interfere with •the proper exercise of this power. The inhabitants of other States and foreign countries may send their hay, flour, beef, pork, tobacco, illuminating oils, to our market for sale, and no power in the State can prevent it; but the State can and it is bound to subject all such articles to ■such inspection as will protect buyers and consumers from fraud, health. from injury, and life and property from destruction.
Fourth — Clause 2, section 10, article 1, declares that “ no State shall without the consent of Congress lay any imposts or duties on imports or exports, except what may be absolutely necessary for the execution of its inspection laws, * * * and all such laws shall be subject to the revision and control of the Congress.”
It is clear that the act of 1877 is an inspection law. Not a dollar of the fees goes into the State treasury; and whether these fees are in excess of what would be absolutely necessary or not, they are not a tax. They are the means provided to be used and expended by the Board of Health in the execution of the law. It is not alleged, nor is it proven, that the fees allowed are not absolutely necessary for executing the law; and the presumption is that, having the power to the extent of the necessity, the Legislature has not exceeded that power. But if this allegation were made, the serious question would arise whether it would be cognizable in a judicial tribunal.
Unquestionably, there are some of the prohibitions in restriction' of State power in section 10 of article 1 of the constitution which must be enforced by the judicial power; perhaps all those contained in the first clause of this section; but with respect to the State laws which clause 2 recognizes and does not prohibit, within certain limitations they seem to be subjected to one tribunal only — “ to the revision and control of the Congress.”
It is not necessary, however, to pass upon this question. It suffices to say that in this case there is no allegation, there is no proof, author- . izing any inquiry as to the necessity of the amount fixed by the statute for the execution of the law; nór is there in the act itself any apparent violation of the constitution of the United States.
■ The act is wise and wholesome; and its rigid enforcement may prevent or diminish the number of the shocking accidents from the' incautious use of illuminating oils and fluids with which the columns of the daily press teem.
The judgment appealed from is affirmed with costs.
Rehearing refused.